IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| | ) | |
| | ) | 2 CA-MH 2003-0002-SP |
| IN RE THE COMMITMENT OF | ) | DEPARTMENT A |
| OLIN GENE TAYLOR | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. A-20020013

Honorable Paul E. Tang, Judge

VACATED AND REMANDED

---

Barbara LaWall, Pima County Attorney
  By Amy Pignatella Cain                                            Tucson
                                              Attorneys for Appellant

Barton & Storts, P.C.
  By Brick P. Storts, III                                          Tucson
                                              Attorneys for Appellee

---

F L Ó R E Z, Judge.

¶1         The state appeals from the trial court's order of December 24, 2002, dismissing civil commitment proceedings brought against Olin Gene Taylor pursuant to Arizona's Sexually Violent Persons (SVP) Act, A.R.S. §§ 36-3701 through 36-3717, and ordering his immediate release from the Arizona State Hospital. At issue in this appeal is the meaning of the term "civil commitment proceedings" as used in § 36-3701(6)(b). Interpreting the statute de novo, see State v. Hoggatt, 199 Ariz. 440, 18 P.3d 1239 (App. 2001), we hold that the term includes commitment proceedings under the SVP Act and that the trial court erred in concluding otherwise.

Factual and Procedural Background

¶2         Taylor was accused of sexually molesting an eight-year-old girl as she slept in a home where Taylor had been drinking with her father. After a jury found Taylor guilty of child molestation and the trial court sentenced him in 1998 to a twenty-year prison term, we reversed his conviction based on the improper admission at trial of the victim's videotaped, out-of-court statement, which was consistent with her in-court testimony. State v. Taylor, 196 Ariz. 584, 2 P.3d 674 (App. 1999).

¶3         On remand, Taylor entered into a plea agreement, under which he agreed to plead no contest to a reduced charge of attempted kidnapping, admitted "that the offense charged in this plea agreement was committed for the purpose of sexual gratification pursuant to A.R.S. § 13-118," and agreed to register as a sex offender pursuant to A.R.S. § 13-3821. The trial court accepted his guilty plea, found him guilty, and sentenced him to five years in prison. Before his scheduled release, the state instituted these SVP proceedings by petitioning for his detention and evaluation pursuant to §§ 36-3704 and 36-3705.

2

¶4 Taylor moved to dismiss the proceedings in August 2002 based on § 36-3701(6)(b), which, in combination with § 36-3701(6)(c), defines a sexually violent offense to include attempted kidnapping, provided "the court at the time of sentencing or civil commitment proceedings determines beyond a reasonable doubt that the act was sexually motivated pursuant to § 13-118."[1] Ignoring the "or civil commitment proceedings" language of § 36-3701(6)(b), Taylor argued that his attempted kidnapping conviction did not qualify as a sexually violent offense because the trial court had not made an explicit finding on the record at sentencing that the offense had been sexually motivated. Rejecting that argument, the trial court ruled that the sentencing court's

_____

[1]In its entirety, A.R.S. § 36-3701(6) provides:

6. "Sexually violent offense" means any of the following:

(a) Sexual conduct with a minor pursuant to § 13-1405, sexual assault pursuant to § 13-1406, sexual assault of a spouse pursuant to § 13-1406.01, molestation of a child pursuant to § 13-1410 or continuous sexual abuse of a child pursuant to § 13-1417.

(b) Second degree murder pursuant to § 13-1104, first degree murder pursuant to § 13-1105, assault pursuant to § 13-1203, aggravated assault pursuant to § 13-1204, unlawful imprisonment pursuant to § 13-1303, kidnaping pursuant to § 13-1304 or burglary in the first degree pursuant to § 13-1508 if the court at the time of sentencing or civil commitment proceedings determines beyond a reasonable doubt that the act was sexually motivated pursuant to § 13-118.

(c) An attempt, a solicitation, a facilitation or a conspiracy to commit an offense listed in subdivision (a) or (b) of this paragraph.

(d) An act committed in another jurisdiction that if committed in this state would be a sexually violent offense listed in subdivision (a) or (b) of this paragraph.

(e) A conviction for a felony offense that was in effect before September 1, 1978, that if committed on or after September 1, 1978 would be comparable to a sexually violent offense listed in subdivision (a) or (b) of this paragraph.

reference to § 13-118 in the sentencing minute entry "serve[d] as that court's finding, beyond a reasonable doubt, that the instant offense was committed for the purpose of respondent's sexual motivation."

¶5        We accepted jurisdiction of Taylor's petition seeking special action relief from the denial of his motion to dismiss. With only selected excerpts from the trial court record before us—notably not including Taylor's written plea agreement, the minute entry of the change-of-plea hearing, or the reporter's transcript—we granted partial relief. Taylor v. Tang, No. 2 CA-SA 2002-0099 (decision order filed Nov. 26, 2002). Our specific, narrow holding was that, by itself, "the mere, unexplained reference to § 13-118 in a sentencing minute entry does not constitute" or necessarily reflect a finding by the trial court, beyond a reasonable doubt, that the underlying act was sexually motivated.

¶6        In the trial court, Taylor again moved to dismiss the SVP proceedings. He argued the state was unable to establish the predicate conviction for a sexually violent offense required by § 36-3701(7)(a) because the trial court had not formally determined at sentencing that Taylor's criminal acts had been sexually motivated and because, he contends, § 36-3701(6)(b) does not allow the court to make the finding later during the SVP proceedings.

¶7        Agreeing with Taylor, the trial court granted his motion and dismissed the SVP proceeding. The court reasoned that, if our legislature had intended to permit the determination to be made either at the time of sentencing or during subsequent civil commitment proceedings under the Act, the statute would have said literally that, as its counterpart in the prototype Kansas statute does. See Kan. Stat. Ann. § 59-29a02(e)(13). Thus, the trial court concluded, the term "civil commitment proceedings" in § 36-3701(6)(b) refers to actions commenced either "under

4

Rule 11, [Ariz. R. Crim. P.,] where a determination is made by the court as to whether an accused should be civilly committed in lieu of being criminally incarcerated, or under the involuntary commitment statutes of Title 36."

Meaning of "Civil Commitment Proceedings" in § 36-3701(6)(b)

¶8 Our primary goal in construing a statute is to discern and give effect to the intent of the legislature. Zamora v. Reinstein, 185 Ariz. 272, 915 P.2d 1227 (1996). We look first to its language as "the best and most reliable index of a statute's meaning." Janson v. Christensen, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If its meaning is not apparent from the language itself, we "then consider other factors such as the statute's context, history, subject matter, effects and consequences, spirit, and purpose. We also seek to harmonize related statutes and 'aim to achieve consistency among them' within the context of the overall statutory scheme." State v. Fell, 203 Ariz. 186, ¶6, 52 P.3d 218, ¶6 (App. 2002) (citation omitted), quoting Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund, 194 Ariz. 488, ¶18, 984 P.2d 574, ¶18 (App. 1999).

¶9 For a number of reasons, we conclude the trial court misinterpreted § 36-3701(6)(b). First, although the specific language used in the Kansas statute ("or subsequently during civil commitment proceedings pursuant to this act," Kan. Stat. Ann. § 59-29a02) might be preferable to the more succinct "civil commitment proceedings" in our statute, the wording of § 36-3701(6)(b) by no means precludes the same interpretation, nor does it compel a different one. We believe that the Arizona legislature intended our statute to operate the same as its Kansas counterpart and, hence, that a trial court may make the determination contemplated by § 36-3701(6)(b) during civil commitment proceedings under the SVP Act if the sentencing court did not previously do so.

5

¶10 Second, this is the most logical and likely construction of § 36-3701(6)(b). See Janson, 167 Ariz. at 472, 808 P.2d at 1224 ("We must read the statute . . . to give it a fair and sensible meaning."). Indeed, the Act elsewhere explicitly provides for this procedure. Section 36-3707(A) states:

> A. The court or jury shall determine beyond a reasonable doubt if the person named in the petition is a sexually violent person. If the state alleges that the sexually violent offense on which the petition for commitment is based was sexually motivated, the state shall prove beyond a reasonable doubt that the alleged sexually violent act was sexually motivated.

A parallel provision, subsection (D) of § 36-3707, pertains to those allegedly sexually violent persons found incompetent to stand trial on the criminal offense with which they were charged. Subsection (D) permits the court hearing an SVP petition to "hear evidence and determine if the person committed the act or acts charged if the court did not enter a finding before the charges were dismissed." It is plain from § 36-3707 that the determination that an offense was sexually motivated need not be made before or outside SVP proceedings themselves.

¶11 Third, the trial court's conclusion that "'civil commitment proceedings' refers to actions commenced under Rule 11" does not withstand close scrutiny. Rule 11 is a rule of criminal, not civil, procedure. See Ariz. R. Crim. P. 11, 16A A.R.S.; A.R.S. §§ 13-4501 through 13-4517. Rule 11 competency proceedings themselves and the "competency restoration treatment" that a court may order for a defendant found to be incompetent are not civil commitment proceedings. See Ariz. R. Crim. P. 11.5; § 13-4512. Rule 11.5(b)(2)(I) provides, if the court determines "there is no substantial probability that [an incompetent] defendant will become competent within 21 months of the date found incompetent, it may . . . [r]emand [the]

defendant to [the] Department of Health Services to begin civil commitment proceedings pursuant to Title 36, Chapter 5." (Emphasis added.) Likewise, Rule 11.6(e) provides that, upon the discretionary dismissal of criminal charges against an incompetent defendant, "the defendant shall be released from custody unless the court finds that the defendant's condition warrants a civil commitment hearing pursuant to A.R.S. § 36-501." (Emphasis added.) See also § 13-4517(1). Simply stated, proceedings under Rule 11 are not "civil commitment proceedings."

¶12　　　　Nor is it plausible that "civil commitment proceedings" in § 36-3701(6)(b) refers to the procedures in chapter 5 of Title 36, A.R.S., for the involuntary commitment of mentally ill persons. In involuntary commitment proceedings under §§ 36-533 through 36-540, the issue for decision is whether there is clear and convincing evidence that "the proposed patient, as a result of mental disorder, is a danger to self, is a danger to others, is persistently or acutely disabled or is gravely disabled and in need of treatment, and is either unwilling or unable to accept voluntary treatment." § 36-540(A). Nowhere in chapter 5 is there any reference either to the proposed patient's having committed a sexually motivated criminal act or to the SVP statutes.

¶13　　　　In fact, there is no connection, either inherent or express, between the general mental health commitment procedures in chapter 5 of Title 36 and either the criminal code in Title 13, A.R.S., or the SVP Act in chapter 37 of Title 36. Whether a mentally ill person in need of court-ordered treatment might also have committed a criminal offense is irrelevant in involuntary commitment proceedings under chapter 5. Consequently, there is no reason, requirement, or statutory mechanism for a court conducting proceedings under chapter 5 to formally determine whether a proposed patient has committed any of the offenses itemized in § 36-3701(6)(b), much

7

less to determine, beyond a reasonable doubt, "that [any such] act was sexually motivated pursuant to § 13-118."[2]

¶14 Our interpretation of § 36-3701(6)(b) receives further support in the legislative history of the SVP Act. In 1998, the legislature changed the definition of a sexually violent person[3] in § 36-3701(7)(a) from one who "[h]as been convicted of . . . a sexually violent offense" to one who "[h]as ever been convicted of" such an offense. 1998 Ariz. Sess. Laws, ch. 136, § 7 (emphasis added). A concurrent, parallel change added the phrase "at any time" to all three subsections of § 36-3702(A). 1998 Ariz. Sess. Laws, ch. 136, § 8. Taken together with the statement of legislative intent that "protecting the public from sex offenders is a paramount governmental interest," 1995 Ariz. Sess. Laws, ch. 257, § 10, these changes manifest an unmistakable intention to view persons who have committed a predicate offense as potential sexually violent persons, regardless of whether they committed the qualifying offense before or after June 30, 1996, the effective date of the Act. 1995 Ariz. Sess. Laws, ch. 257, § 11(B).

¶15 Given that clear intent, it is evident that the inclusion of "civil commitment proceedings" in § 36-3701(6)(b) supplies the mechanism for bringing within the Act those persons

---

[2]Indeed, in the statement of legislative intent accompanying the SVP Act, the legislature took pains to distinguish sexually violent persons from other persons suffering from mental illness. Noting that sexually violent persons normally are not "appropriate candidates for existing involuntary commitment procedures," the legislature observed that "the treatment modalities for sexually violent offenders are very different than the traditional treatment modalities for persons who are appropriate candidates for involuntary commitment." 1995 Ariz. Sess. Laws, ch. 257, § 10. Civil commitment proceedings under chapters 5 and 37 of Title 36, A.R.S., then, are independent, unrelated proceedings.

[3]Initially, the Act used the term "sexually violent predator," which was changed in 1997 to "sexually violent person." 1997 Ariz. Sess. Laws, ch. 136, § 30.

whose sexually violent conduct led to a conviction for one of the offenses listed in § 36-3701(6)(b) before the Act's effective date. If the finding of underlying sexual motivation in those offenses could not be made during the SVP proceedings, the result would be truly anomalous: persons convicted of an offense listed in § 36-3701(6)(a) could be civilly committed as sexually violent persons regardless of when they committed their crimes, while persons convicted of an offense listed in § 36-3701(6)(b) would only be subject to the Act if they were sentenced for an offense committed after June 30, 1996, by a court that expressly determined, beyond a reasonable doubt, that the underlying criminal conduct had been "sexually motivated pursuant to § 13-118."[4] § 36-3701(6)(b). We can find no rational basis for such differentiation nor for the disparate treatment it would produce. We do not believe our legislature intended such paradoxical results, particularly given its "paramount" goal of protecting the public from sexually dangerous persons. 1995 Ariz. Sess. Laws, ch. 257, § 10.

¶16        Our conclusion that the SVP Act applies equally to persons who committed qualifying offenses both before and after its enactment requires that we construe the phrase "pursuant to section 13-118" in § 36-3701(6)(b) as logically susceptible to more than one meaning. For cases after June 1996 in which the state has elected to file a special allegation of sexual motivation under § 13-118(A), the phrase "pursuant to" may denote adherence to the procedures specified in subsections (A) and (B) of § 13-118. For all other cases, in which § 13-118(A) and (B) either did not yet exist or, for whatever reason, have not been followed, the phrase "sexually

---

[4]Section 13-118, A.R.S., defines the term "sexual motivation" and creates the procedure by which a prosecutor may allege and prove a defendant's sexual motivation in a "criminal case involving an offense other than a sexual offense." Section 13-118 and the SVP Act were contemporaneously enacted in 1995. 1995 Ariz. Sess. Laws, ch. 257, § 1.

9

motivated pursuant to § 13-118" can and should reasonably be interpreted to mean "sexually motivated as defined in § 13-118(C)."

¶17     To ascribe a more restrictive meaning to the phrase "pursuant to" in this specific context would eliminate as qualifying predicate offenses all crimes listed in § 36-3701(6)(b) that were prosecuted before the SVP Act and § 13-118 were enacted. Such an interpretation would run counter to the 1998 amendments previously discussed, whose obvious purpose was to broaden the scope of the Act to include all potentially dangerous persons who have ever committed a sexually violent act, regardless of when the crime or crimes occurred. The alternative construction of "pursuant to" that we adopt instead is consistent with the legislature's clear intent and with the following well-established rules of statutory construction:

> "Statutory provisions are to be read in the context of related provisions and of the overall statutory scheme. The goal is to achieve consistency among the related statutes." Enactments which deal with the same class of things and have a common purpose are in pari materia and must be read and construed together in order to give full effect to each statute, if possible.

Prudential v. Estate of Rojo-Pacheco, 192 Ariz. 139, 148-49, 962 P.2d 213, 222-23 (App. 1997) (citations omitted), quoting Goulder v. Ariz. Dep't of Transp., 177 Ariz. 414, 416, 868 P.2d 997, 999 (App. 1993), aff'd 179 Ariz. 181, 877 P.2d 280 (1994).

¶18     In sum, we believe our legislature intended to permit the determination of sexual motivation referred to in § 36-3701(6)(b) to be made either by the court at the time of sentencing or by the trier of fact during subsequent civil commitment proceedings pursuant to the SVP Act. See § 36-3707(A). Accordingly, we hold that the term "civil commitment proceedings" in § 36-

10

3701(6)(b) specifically includes commitment proceedings pursuant to the SVP Act. The trial court thus erred in granting Taylor's motion to dismiss.

¶19        In remanding the case for trial pursuant to §§ 36-3706 and 36-3707, we note that the record on appeal contains documents and information that the record previously before us on Taylor's petition for special action did not. Noting in our decision order in the special action that our ruling was necessarily constrained by the incomplete record provided us, we expressly left open the possibility that additional information might lead to other findings. Further, we stated: "We see no bar to a pleading defendant's similarly admitting that a crime was sexually motivated. Without a copy of the plea agreement or the minute entry or transcript of the change-of-plea proceeding, however, we have no way of knowing whether that might have happened in this case."

¶20        What we now know is that Taylor's written plea agreement did indeed contain an express proviso that the attempted kidnapping charge he admitted had been "committed for the purpose of sexual gratification pursuant to A.R.S. § 13-118." This admission is, of course, highly material to the question of sexual motivation for purposes of § 36-3701(6)(b), that the trier of fact must determine at trial. See §§ 36-3707(A), 36-3701(7)(a).

¶21        The trial court's order of December 24, 2002, is vacated, and we remand the case for further proceedings consistent with this decision.

_____
M. JAN FLÓREZ, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
JOSEPH W. HOWARD, Judge

12