IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. RACHEL H. MITCHELL, Maricopa County
Attorney, *Petitioner*,

*v.*

THE HONORABLE KERSTIN LEMAIRE, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
MARICOPA, *Respondent Judge*,

JOEL MCCLAIN CARSON, *Real Party in Interest*.

No. 1 CA-SA 23-0098
FILED 7-13-2023

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2023-000872-001
The Honorable Kerstin G. LeMaire, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Julie A. Done, Juli S. Warzynski, Nicholas Klingerman
*Counsel for Petitioner*

Maricopa County Legal Defender's Office, Phoenix
By Kush Govani
*Counsel for Real Party in Interest*

## OPINION

Judge Daniel J. Kiley delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

**K I L E Y**, Judge:

¶1   Petitioner State of Arizona sought relief by special action from the superior court's dismissal of first-degree murder and other charges against Real Party in Interest Joel McClain Carson. By order issued June 2, 2023, we accepted jurisdiction and granted relief for reasons more fully set forth here.

## FACTS AND PROCEDURAL HISTORY

¶2   In May 2018, Carson was charged in *State v. Carson*, No. CR2018-124276 (the "2018 Case") with first-degree murder and other felonies. A little more than a year later, the charges were dismissed without prejudice after the superior court determined that Carson was neither competent to stand trial nor restorable within the period prescribed by statute.

¶3   In July 2022, the State refiled the same charges against Carson in *State v. Carson*, No. CR2022-006384 (the "2022 Case").[1] On defense counsel's motion, the Honorable Jo Lynn Gentry ordered the initiation of competency proceedings.

¶4   Defense counsel then reversed position, asking that the order for renewed competency proceedings be vacated. Asserting that Carson was entitled to a presumption of continued incompetency because he was found incompetent in the 2018 Case, defense counsel argued that ordering a new competency evaluation was error because "no evidence" had been presented "to support a change in competency." Defense counsel later supplemented his motion with a request that the 2022 Case be dismissed on grounds of incompetency.

¶5   In February 2023, this Court held in an unrelated case that leave of court is required before the State can refile charges that were

---

[1] The State also charged an additional felony, Misconduct Involving Weapons, in the 2022 Case.

previously dismissed because the defendant was adjudged incompetent. *Johnson v. Hartsell ex rel. County of Maricopa*, 254 Ariz. 585, 591-92, ¶¶ 22-27 (App. 2023). Pursuant to *Johnson*, the State filed a motion in the 2022 Case asking Judge Gentry to "grant permission, albeit . . . after the fact, for the re-charging of this case." The State supported its request by noting that Carson was placed under an involuntary inpatient treatment order after being found incompetent in the 2018 Case and that the State filed the 2022 Case upon learning that he was due to be released from Valleywise Behavioral Health Center ("Valleywise"). Carson's scheduled release from Valleywise, the State contended, "demonstrates that Valleywise deemed [Carson's] mental status significantly improved."

¶6            In March 2023, Judge Gentry denied Carson's request to vacate the competency proceedings and granted the State permission to refile the charges. Finding that the State's discovery in July 2022 that Carson was due to be released from Valleywise gave the State a "reasonable belief," as required by *Johnson*, "that [Carson] ha[d] regained competency," Judge Gentry dismissed the 2022 Case without prejudice. The State then refiled the charges in *State v. Carson*, No. CR2023-000872 (the "2023 Case").

¶7            Carson moved to dismiss the 2023 Case, asserting that he was entitled to the presumption of continued incompetency after being found incompetent in the 2018 Case. Noting that, under *Johnson*, the State could not properly refile the dismissed charges without reasonable grounds to believe he is now competent, Carson argued that "the State's proffered reasons for a change in competency"—*i.e.*, his participation in court-ordered treatment and his imminent release from Valleywise—were "insufficient" to "support a change in competency." Because the State presented no "new evidence" to dispel "the previous incompetency determination," he concluded, the presumption of continued incompetency required dismissal of the charges.

¶8            Pointing out that Judge Gentry had already granted leave to refile the charges, the State argued in response that Carson was engaged in "inappropriate forum shopping" by asking the judge in the 2023 Case, the Honorable Kerstin LeMaire, to "second guess Judge Gentry."

¶9            In reply, Carson acknowledged that his motion to dismiss the 2023 Case was brought to challenge Judge Gentry's ruling in the 2022 case granting the State's request to re-file charges. He insisted, however, that Judge LeMaire could properly revisit Judge Gentry's ruling because he purportedly had "no other way of challenging" Judge Gentry's ruling. Asserting that special action relief from Judge Gentry's ruling in the 2022

Case was not available since Judge Gentry dismissed the 2022 Case, Carson argued that his motion to dismiss the 2023 Case was "the only vehicle by which [he] may challenge Judge Gentry's order."

**¶10**        Finding "that it does not appear that the State had a reasonable belief that [Carson] regained competency prior to refiling the charges in this matter," Judge LeMaire granted Carson's motion and dismissed the 2023 Case without prejudice.

**¶11**        The State sought relief by special action from the dismissal order. By order, we accepted jurisdiction, set aside the dismissal order, and remanded to the superior court for a competency examination or other proceedings to determine Carson's current competency status.

## DISCUSSION

**¶12**        Relief by special action is appropriate where no "equally plain, speedy, and adequate remedy by appeal" exists. Ariz. R.P. Spec. Act. 1(a). Special action jurisdiction may be warranted, for example, in cases raising "issues that are of statewide importance," *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 297, ¶ 14 (App. 2014), such as those involving the interpretation of new rules and other questions of first impression, *Kellin v. Lynch*, 247 Ariz. 393, 396, ¶ 9 (App. 2019); *see also Fuller v. Olson ex rel. County of Pinal*, 233 Ariz. 468, 471, ¶ 5 (App. 2013) ("Acceptance of special action jurisdiction is appropriate when a case presents a novel question of statewide importance that is also a question of law.").

**¶13**        Our decision to accept special action jurisdiction in a particular case is highly discretionary. *Prosise v. Kottke*, 249 Ariz. 75, 77, ¶ 10 (App. 2020). We accepted jurisdiction here because the State had no adequate remedy by appeal and because interpretation of *Johnson*'s requirement that the State obtain judicial approval before refiling charges previously dismissed on grounds of incompetency is a matter of statewide importance. *See Sarchett v. Superior Court ex rel. County of Maricopa*, 168 Ariz. 321, 322 (App. 1991) (accepting special action jurisdiction "to clarify the meaning of" a "newly amended rule," "an issue of statewide importance impacting all trial courts").

**¶14**        Arizona law as well as principles of due process prohibit the State from prosecuting an incompetent defendant. *See* A.R.S. § 13-4502(A) ("A person shall not be tried, convicted, sentenced or punished for an offense if the court determines that the person is incompetent to stand trial."); *Medina v. California*, 505 U.S. 437, 439 (1992) ("It is well established

that [due process] prohibits the criminal prosecution of a defendant who is not competent to stand trial.").

¶15     "[A] prior adjudication of mental incompetency gives rise to a rebuttable presumption of continued incompetency." *State v. Bradley*, 102 Ariz. 482, 487 (1967), *overruled in part on other grounds by State v. Harvill*, 106 Ariz. 386, 391 (1970). A determination of incompetency does not, however, forever immunize a defendant from being held accountable for his or her criminal acts. After all, competency is fluid, and a defendant who is found incompetent at the outset of a criminal case may properly be found competent later. *See* A.R.S. § 13-4510(C) (stating that upon determining that the defendant is incompetent, "the court shall order treatment for the restoration of competency unless there is clear and convincing evidence" that such restoration treatment will not be effective within specified period); *State v. Lewis*, 236 Ariz. 336, 340-41, ¶ 10 (App. 2014) ("[R]estoration treatment . . . often results in restoration to competence or a discovery the defendant had been malingering.").

¶16     For this reason, the State may refile charges that were dismissed on grounds of incompetency if there is reason to believe that the defendant has regained competency (or was malingering all along and thus never incompetent in the first place). *See Rider v. Garcia ex rel. County of Maricopa*, 233 Ariz. 314, 316-17, ¶ 9 (App. 2013) ("The treatment that a person receives while civilly committed may have the result of restoring competency," and so "the state may refile charges if post-dismissal events suggest that the defendant has regained competency."); *Oligschlaeger v. Mulleneaux*, 1 CA-SA 19-0083, 2019 WL 2185161, at *4, ¶ 16 (Ariz. App. May 21, 2019) (mem. decision) ("[O]nce the court dismisses a charge after a not-restorable conclusion, the State may only refile the charge when evidence of subsequent events provides a reasonable belief of restoration.").

¶17     Whether a defendant has regained competency such that dismissed charges may properly be refiled is a question that was long left to the State to determine in the first instance. Only after the State refiled charges would the court examine the defendant's current competency status. *See, e.g., Rider*, 233 Ariz. at 316, ¶ 5 (noting that defense counsel sought competency determination after state re-filed charges against defendant previously found incompetent).

¶18     Allowing the State to refile charges based on its own understanding of the defendant's competency status raised questions, however, about whether incompetent persons' due process rights were adequately protected. Various courts expressed concern, for example, that

a prosecutor may refile dismissed charges to keep a jailed defendant in custody notwithstanding the defendant's ongoing incompetency. *See, e.g.*, *id.* at 317, ¶ 10 (noting that "the state's ability to refile charges" against an incompetent defendant "has limits," and "the state may not continually refile charges for the purpose of holding a defendant based only on his chronic incompetence to stand trial"); *Victor v. State*, 516 P.3d 506, 509 (Alaska Ct. App. 2022) (noting the "possibility that the State could harass a mentally ill defendant by repeatedly litigating the same dismissed charges—each time subjecting the defendant to judicial process, to potential pre-trial incarceration, to renewed psychiatric evaluations, and . . . to the anxiety of facing criminal proceedings again").

¶19 To protect incompetent persons from the refiling of dismissed charges for improper purposes (such as to prolong their incarceration), the *Johnson* court held that the State must obtain leave of court before refiling charges that were previously dismissed on grounds of incompetency. 254 Ariz. at 591, ¶ 25. Rejecting the position that "the State need only assure *itself* that . . . grounds exist" to believe the defendant regained competency before re-filing charges, the *Johnson* court held instead that "the State must first allege its facts *to a court* to determine whether reasonable grounds exist" to find the defendant competent. *Id*. at ¶¶ 23, 25 (emphasis added). To allow the State to refile charges without first "alleg[ing] evidence to a court supporting its reasonable belief that a person is now competent," the *Johnson* court explained, "would condone a 'revolving door' procedure allowing the State to restrain presumed incompetent persons based on past acts without reason to believe they are now competent." *Id*. at 592, ¶ 26.

¶20 Though *Johnson* holds that the State must obtain leave of court before refiling charges that were dismissed on grounds of the defendant's incompetency, *Johnson* makes clear that "the State does not have to *prove* the defendant's competency" to obtain such leave of court. *Id.* at 591, ¶ 24. Instead, the State need only "provide information to the court . . . that supports a reasonable belief that the defendant has regained competency." *Id.* at ¶ 25. "If the court agrees" that the State has alleged information giving rise to a reasonable belief that the defendant is competent, "the State may refile the charges, and either party or the court can request a competency examination." *Id.* This "procedure," the *Johnson* court found, protects the due process rights of a defendant found to be incompetent without "hinder[ing] the State's ability to reevaluate [the] defendant's competency." *Id.*

¶21 In short, *Johnson* contemplates that the State be given a reasonable opportunity to gather evidence of a defendant's current

competency status after the State obtains leave of court to refile charges previously dismissed on grounds of incompetency. After the State has been given a reasonable opportunity to gather and present evidence of the defendant's current competency status, the court must then determine whether the evidence is sufficient to dispel the presumption of continued incompetency. Only if the court determines that the evidence is sufficient to dispel the presumption of continued incompetency may the prosecution proceed. *Bradley*, 102 Ariz. at 487 (explaining that presumption of continued incompetency is "outweighed" if, *inter alia*, "evidence of restoration to competency . . . is accepted as satisfactory . . . *by the court*" (emphasis added)).

**¶22**     In his response to the State's petition for special action, Carson argues that Judge Gentry's March 2023 order was erroneous for a variety of reasons. He complains, among other things, that Judge Gentry granted the State's request for leave to refile charges before he filed his response (and before his response was even due) and further asserts that "Judge Gentry's decision . . . was incorrect based on . . . longstanding due process precedent."

**¶23**     Whatever the merits of Carson's challenge to Judge Gentry's order (and we do not consider them here), Carson was not entitled to challenge Judge Gentry's ruling in the 2022 Case by filing a motion to dismiss the 2023 Case based on the same grounds presented to, and rejected by, Judge Gentry. If Carson was of the view that Judge Gentry erred in granting the State leave to refile charges, his available remedies were to file a motion for reconsideration in the 2022 case or to challenge Judge Gentry's ruling by special action to this Court. *See State v. Kangas*, 146 Ariz. 155, 157 (App. 1985) (noting that defendant may challenge dismissal without prejudice by special action); *cf. Kool Radiators, Inc. v. Evans*, 229 Ariz. 532, 535, ¶ 11 (App. 2012) (explaining that, although the Court of Appeals has no appellate jurisdiction to review order awarding attorney fees to defendants and dismissing complaint without prejudice, it could exercise special action jurisdiction to review plaintiff's challenge to order). The court erred in dismissing the 2023 Case based on the same grounds presented to, and rejected by, Judge Gentry, without requiring a new competency evaluation or otherwise providing the State an opportunity to gather and present evidence of Carson's current competency status. *See State v. Paris-Sheldon*, 214 Ariz. 500, 508, ¶ 23 (App. 2007) (holding that trial court did not err in denying defendant's motion to dismiss charges that were re-filed after being dismissed without prejudice in prior case, reasoning that "the proper method" of challenging the prior dismissal without prejudice "was

through a motion for reconsideration or petition for special action filed in [the dismissed case], not by a motion to dismiss filed in a different case").

**¶24**     We hold that, once the State refiles charges with leave of court as required by *Johnson*, the superior court cannot dismiss the refiled charges on grounds of incompetency without first giving the State an opportunity to gather and present evidence bearing on the defendant's competency.

**¶25**     Our holding is consistent with *Johnson*. *See Johnson*, 254 Ariz. at 591, ¶ 25 ("If the court agrees" that the State has provided information giving rise to a reasonable belief that the defendant is competent, "the State may refile the charges, and either party or the court can request a competency examination.").

**¶26**     Our holding is also consistent with the well-established policy against reconsideration of judicial decisions based on no new evidence or changed circumstances. *See Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 214 (App. 1990) ("[O]ne trial judge should not reconsider the decision of another in the absence of new circumstances" because doing so "is wasteful of judicial resources and encourages 'try again' motion practice when a new judge gets a case."). Though invoked most often when a judge is asked to revisit a decision made by a predecessor judge "in the same matter," *see Donlann v. MacGurn*, 203 Ariz. 380, 385, ¶ 29 (App. 2002) (citation omitted), the policy against horizontal appeals applies with equal if not greater force where, as here, two cases are involved. *See Matter of Forfeiture of $3,000.00 U.S. Currency*, 164 Ariz. 120, 121 (App. 1990) (affirming denial of purported property owner's verified claim to seized property after owner failed to appeal the dismissal of prior pleading asserting claim to same property; "Were we to allow a new action to be filed . . . we would be allowing a horizontal appeal to another judge[.]"). Carson's motion to dismiss the 2023 Case constituted the kind of horizontal appeal of another superior court judge's ruling of which our courts have long disapproved. *Id.; see also Kangas*, 146 Ariz. at 157-58 (rejecting defendant's challenge to charges that were re-filed after being dismissed without prejudice due to speedy trial violation, and stating that defendant should have challenged prior judge's order of dismissal without prejudice by special action; "[B]y re-arguing in [a] subsequent action the propriety of [prior] order dismissing the charges [without prejudice], [defendant] was in essence seeking a horizontal review of that ruling by another superior court judge, a practice which has been consistently criticized and disapproved by our courts.").

## CONCLUSION

¶27　　　　Once a court grants the State leave to refile charges pursuant to *Johnson* after finding that the State has alleged a reasonable basis to believe that the defendant is currently competent, the refiled case cannot be dismissed based on the presumption of continued incompetency unless the State is first given an opportunity to gather and present evidence bearing on the defendant's current competency status, including by requesting a renewed competency examination.

¶28　　　　A defendant who seeks to challenge a court's determination that the State has sufficiently alleged a reasonable basis to believe that the defendant is currently competent may either move for reconsideration or challenge the ruling by special action to an appellate court. The defendant is not, however, entitled to seek a horizontal appeal of an order granting the State leave to refile charges by moving to dismiss the refiled case based on information and arguments that the defendant already presented, or could have presented, in opposition to the State's request to refile the charges.

¶29　　　　For these reasons, we accepted jurisdiction, set aside the order dismissing the 2023 Case, and remanded the case to the superior court for further proceedings.

